United States Bankruptcy Court
Southern District of Texas

**ENTERED**

May 16, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 22-33772 |
| MICHAEL FLOYD BORTZ, CRYSTAL DAWN BORTZ, | § | |
| | § | CHAPTER 7 |
| | § | |
| Debtors. | § | |
| | § | |
| CHAD LAVENDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 23-3052 |
| | § | |
| MICHAEL FLOYD BORTZ and CRYSTAL DAWN BORTZ, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION

This adversary proceeding was initiated by a complaint seeking to establish a non-dischargeable judgement against the debtors in this bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A). On, January 27, 2025, the Court conducted a trial which concluded on January 28, 2025. The Court now issues this instant Memorandum Opinion.

### I.    FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, which is made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This

Memorandum Opinion supplements those findings and conclusions.  If there is an inconsistency, this Memorandum Opinion controls.

## A.  Procedural Background

1.  On December 19, 2022, (the "*Petition Date*") Michael Floyd Bortz ("*Mr. Bortz*") and Crystal Dawn Bortz ("*Mrs. Bortz*") (collectively, "*Debtors/Defendants*") filed for bankruptcy protection under chapter 7 of the Bankruptcy Code[1] initiating the bankruptcy case. [2]

2.  On March 27, 2023, Chad Lavender ("*Plaintiff*") timely filed the instant Complaint.[3]

3.  On May 2, 2023, Debtors filed their answer to the Complaint ("*Answer*").[4]

4.  On January 27, 2025, the Court conducted a two-day trial concluding on January 28, 2025.[5]

## B.  Summary of Facts

In September of 2021, Plaintiff engaged his uncle, Mr. Bortz, to build a barndominium (the "*Barndominium*") on Plaintiff's land located in San Jacinto County, Texas.[6] There is no written contract between Mr. Bortz and Plaintiff.[7] However, Plaintiff had detailed discussions with Defendants regarding building specifications of the Barndominium.[8] Mrs. Bortz was involved in some of the discussions on the design of the Barndominium but not in any price negotiations.[9]

On December 21, 2021, Plaintiff was diagnosed with a medical condition that Plaintiff believed to be life threatening and disabling.[10] After Mr. Bortz learned of Plaintiff's medical condition, the design of the Barndominium was changed to accommodate for Plaintiff's

---

[1] Any reference to "Code" or "Bankruptcy Code" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e.§) thereof refers to the corresponding section in 11 U.S.C.
[2] Bankr. ECF No. 1. "Bankr. ECF" refers to docket entries made in the Debtors' bankruptcy case, No. 22-33772. Entries made in Plaintiff's Adversary Case number 23-3052 shall take the format of ECF No. __.
[3] ECF No. 1.
[4] ECF No. 6.
[5] Jan. 27, 2025 Min. entry; Jan. 28, 2025 Min. Entry.
[6] ECF No. 47 at 13, 18.
[7] ECF Nos. 47 at 9; 48 at 164.
[8] ECF No. 47 at 19–20, 26–27.
[9] ECF No. 47. at 19.
[10] ECF No. 47 at 20–22.

expectation that he would be living in the Barndominium as a disabled and handicapped person.[11] Plaintiff's medical state prevented him from regularly visiting the construction site to monitor the status of the Barndominium.[12] As part of the Barndominium construction, Mr. Bortz made a series of draw requests totaling $176,000 which were paid by Plaintiff directly to either Mr. Bortz or his construction company, Fireside Services LLC ("*Fireside*").[13] Mr. and Mrs. Bortz are 100% owners of Fireside.[14]

On September 17, 2021, Mr. Bortz made an initial draw request of $100,000 which was paid by Plaintiff via a wire transfer to Fireside.[15] Plaintiff believed that the $100,000 would cover the costs of steel, concrete and a $35,000 down payment to Mr. James Dowdell (" *Mr. Dowdell*").[16] On January 11, 2022, Mr. Bortz informed Plaintiff that the $100,000 did not cover the costs of concrete.[17] Out of the first $100,000 received from Plaintiff, $21,000 was paid to Mr. Dowdell as a down payment for his work on the road construction.[18] Mr. Bortz testified that the remaining $79,000 was spent on other "costs" but he could not recall specifically what those other costs were.[19]

The next draw requests made by Mr. Bortz was for $11,000 and it was paid by Plaintiff via wire transfer to Fireside on October 20, 2021.[20] Mr. Bortz represented to Plaintiff that he would use the $11,000 to purchase a mini excavator that was needed for the Barndominium construction.[21] Mr. Bortz testified that he purchased and eventually sold the mini excavator for

---

[11] ECF No. 47 at 22–23.
[12] ECF No. 24–25.
[13] ECF No. 47 at 25, 29.
[14] ECF No. 24-1 at 12.
[15] ECF Nos. 47 at 25; 24-3.
[16] ECF No. 47 at 25–26.
[17] ECF No. 24-3 at 2.
[18] ECF No. 48 at 18–20, 146.
[19] ECF No. 48 at 18–20.
[20] ECF Nos. 47 at 29, 30; 24-4 at 3.
[21] ECF No. 47 at 29, 30.

$10,000 but none of the $10,000 was ever refunded to Plaintiff.[22] The last draw request made by Mr. Bortz was for $65,000 which Mr. Bortz represented would cover the cost of pouring the concrete foundation of the Barndominium,[23] and which Plaintiff paid via a check written to Mr. Bortz that cleared on January 20, 2022.[24] Mr. Bortz also represented to Plaintiff that he was ready to use those funds on pouring the concrete foundation and that if Plaintiff did not immediately pay $65,000, progress on the Barndominium construction would stop.[25] Mr. Bortz later admitted that none of $65,000 was used to purchase concrete or related materials but instead was placed into a bank account of Fireside.[26]

Mr. Dowdell and his company Kelly Down Consulting, LCC ("*Kelly Consulting*") was hired to complete the road and dirt pad needed for the Barndominium construction.[27] There is a dispute as to who hired Mr. Dowdell. Plaintiff asserts that Mr. Dowdell was a subcontractor of Mr. Bortz while Mr. Bortz and Mr. Dowdell believe that Mr. Dowdell was hired directly by Plaintiff and was not a subcontractor.[28] Plaintiff paid invoices billed to him directly from Kelly Consulting which totaled $30,466.4.[29] Mr. Dowdell completed road construction work detailed in his invoices although Plaintiff contends such work did not meet the specifications agreed to.[30]

Plaintiff asserts that he also paid money directly to third party vendors for items that were to be installed in the Barndominium.[31] Plaintiff testified that he made a purchase of customized

---

[22] ECF No. 48 at 34–35, 42.
[23] ECF Nos. 47 at 48, 59, 74, 75; 24-3 at 1.
[24] ECF Nos. 24-5; 47 at 48, 56–59, 74; 24-3 at 3.
[25] ECF Nos. 47–48,53, 56, 59–60; 24-3 at 1.
[26] ECF No. 48 at 21-22.
[27] ECF No. 48 at 122–124.
[28] ECF Nos. 1; 6.
[29] ECF Nos. 48 at 130, 134; 24-2 at 45, 89.
[30] ECF Nos. 48 at 150–152; 47 at 47.
[31] ECF No. 47 at 69.

iron doors for $4,995;[32] a purchase of custom glass doors for $14,429.10;[33] and a purchase of a granite slab for $2,645 (collectively, the "*Fixtures*").[34] Mr. Bortz admitted that Plaintiff purchased the Fixtures and that Mr. Bortz took delivery of them and still has them in his possession.[35]

The Barndominium and its structural foundation was never completed.[36] In August of 2022, Plaintiff, frustrated at the lack of progress and losing trust in Mr. Bortz, terminated Mr. Bortz and requested a refund of all the money that Plaintiff paid to Mr. Bortz and Fireside.[37] No money was in fact ever refunded to Plaintiff.[38]

On March 27, 2023, Plaintiff filed his Complaint requesting the Court to establish a debt owed to Plaintiff by Defendants in the amount of $140,000 stemming from the Defendants' failure to finish construction of the Barndominium and deem that debt non-dischargeable due to Defendants' acts of actual fraud and false representation pursuant to 11 U.S.C. § 523(a)(2)(A).[39] The Debtors' schedules filed with their petition on December 19, 2022 (the "*Schedules*") lists the Plaintiff as an unsecured creditor but omits Plaintiff's address.[40] The Schedules indicate a noncontingent, liquidated and undisputed debt of $140,000 owed to Plaintiff by "Debtor 1 and Debtor 2 only" (the "*Scheduled Debt*"). [41] However, at trial, Plaintiff, requested the Court to find that the total debt owed to Plaintiff by Defendants amounts to $228,545.50.[42] Plaintiff also requests an award of attorney's fees and costs.[43] As an affirmative defense, Defendants assert that, at all

---

[32] ECF Nos. 47 at 68; 48 at 40.
[33] ECF No. 24-2 at 83–86.
[34] ECF No. 47 at 80.
[35] ECF No. 48 at 40–41.
[36] ECF No. 6; 48 at 8.
[37] ECF Nos. 48 at 95–96; 47 at 90–92.
[38] ECF Nos. 48 at 95–96; 47 at 92.
[39] ECF No. 1.
[40] ECF No. 24-1 at 27, 79.
[41] ECF No. 24-1 at 27.
[42] ECF No. 48 at 161.
[43] ECF No. 1 at 3.

relevant times, they were acting as agents for Fireside and therefore any debt owed to Plaintiff is owed by Fireside and not Defendants in their individual capacity.[44]

The Court must now determine whether Plaintiff has established an underlying debt owed to him by Defendants and whether such debt is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## II.    Credibility of witnesses

It is the Court's duty to assess and weigh the credibility of witnesses.[45] At trial, the Court heard testimony from three witnesses: (a) Plaintiff; (b) Mr. Dowdell; and (c) Mr. Bortz. At trial, Plaintiff and Mr. Dowdell responded to questions clearly, completely, and directly.[46] Thus, the Court finds that Plaintiff and Mr. Dowdell are very credible witnesses and gives substantial weight to their testimony.

The Court finds that Mr. Bortz's credibility is highly questionable because of his inconsistent responses, evasive answers, and selective memory when answering certain questions. At various points during his testimony, Mr. Bortz was unable to recall basic details such as how he spent most of the money that he received from Plaintiff.[47] Mr. Bortz admitted that he sold residential real property around December 29, 2022 but testified that he does not remember if he listed such real property or proceeds from its sale on his bankruptcy schedules or who he sold it to.[48] Furthermore, Mr. Bortz's testimony was self-contradicting and frequently departed from his past signed admissions. On his Schedules, Mr. Bortz disclosed that he and Mrs. Bortz owe Plaintiff the amount

---

[44] ECF No. 6 at 3.
[45] *O'Connor v. Burg* (*In re Burg*), 641 B.R. 120 (Bankr. S.D. Tex. 2022); *In re Bigler LP*, 458 B.R. 345, 367 (Bankr. S.D. Tex. 2011) (citing *Port Arthur Towing Co. v. John W. Towing, Inc*, 42 F.3d 312, 318 (5th Cir. 1995)).
[46] *See, e.g., In re Ali*, 2015 Bankr. LEXIS 2443, 2015 WL 4611343 at *4 (Bankr. W.D. Tex. July 23, 2015) (analyzing the clarity, completeness, and quality of witness responses in order to make credibility determinations).
[47] ECF No. 48 at 16, 18–20.
[48] ECF No. 48 at 55.

of $140,000 but admitted at trial that he received $176,000 from Plaintiff.[49] When asked why he listed $140,000 as the amount of debt, he testified both that $140,000 is the amount he thought he owed at the time he filled out the Schedules but also admitted that he had "no idea" what he owed at such time.[50] When questioned as to why the Debtors' Schedules failed to list Plaintiff's address, Mr. Bortz claimed that he did not know Plaintiff's address but admitted that he has visited Plaintiff's home.[51] These examples reflect just a few of the many occurrences in which Mr. Bortz's testimony was not credible. Therefore, the Court finds Mr. Bortz lacks credibility and gives very little weight to his testimony.[52]

### III.   CONCLUSIONS OF LAW

## A.  Jurisdiction and Venue

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[53] Section 157 allows a district court to "refer" all bankruptcy and related cases to the bankruptcy court, wherein the latter court will appropriately preside over the matter.[54] This Court determines that pursuant to 28 U.S.C. § 157(b)(2)(I), this proceeding contains core matters as it primarily involves proceedings concerning the dischargeability of particular debts.[55] This proceeding is also core under the general "catch-all" language because such a suit is the type of proceeding that can only arise in the context of a bankruptcy case.[56]

---

[49] ECF No. 24-1 at 27.
[50] ECF No. 48 at 43.
[51] ECF No. 48 at 45–47.
[52] *In re Burg*, 641 B.R. 120, 129 (Bankr. S.D. Tex. 2022).
[53] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[54] 28 U.S.C. § 157(a); *see also* In re: Order of Reference to Bankruptcy Judges, Gen. Order 2012-6 (S.D. Tex. May 24, 2012).
[55] *See* 11 U.S.C. § 157(b)(2)(A) & (I).
[56] *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its

This Court may only hear a case in which venue is proper.[57]  28 U.S.C. § 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." Debtors' main bankruptcy case is pending in this Court, and therefore, venue of this proceeding is proper.[58]

## B.  Constitutional Authority to Enter a Final Order

While bankruptcy judges can issue final orders and judgments for core proceedings, absent consent, they can only issue reports and recommendations on non-core matters.[59] The determination as to the dischargeability of a particular debt pending before this Court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Accordingly, this Court concludes that the narrow limitation imposed by *Stern* does not prohibit this Court from entering a final order here.[60] Alternatively, this Court has constitutional authority to enter a final order because all parties in interest have consented to adjudication of this dispute by this Court.[61] In its Comprehensive Scheduling, Pre-trial & Trial Order, the Court set July 13, 2023 as the deadline for Plaintiff and Debtors to file a notice of non-consent to the entry of final orders by this Court on all non-core matters.[62] None of these parties filed a notice of non-consent to this Court's constitutional authority to enter a final order or

---

nature, could arise only in the context of a bankruptcy case.") (quoting *Wood v. Wood (In re Wood),* 825 F.2d 90, 97 (5th Cir. 1987)).

[57] 28 U.S.C. § 1408.

[58] ECF No. 24-1.

[59] *See* 28 U.S.C. §§ 157(b)(1), (c)(1); *see also Stern v. Marshall*, 564 U.S. 462, 480 (2011); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938–40 (2015).

[60] *See, e.g.*, *Badami v. Sears (In re AFY, Inc.),* 461 B.R. 541, 547-48 (8th Cir. BAP 2012) ("Unless and until the Supreme Court visits other provisions of Section 157(b)(2), we take the Supreme Court at its word and hold that the balance of the authority granted to bankruptcy judges by Congress in 28 U.S.C. § 157(b)(2) is constitutional."); see also *Tanguy v. West (In re Davis),* No. 00-50129, 538 F. App'x 440, 443 (5th Cir. 2013) ("[W]hile it is true that *Stern* invalidated 28 U.S.C. § 157(b)(2)(C) with respect to 'counterclaims by the estate against persons filing claims against the estate,' *Stern* expressly provides that its limited holding applies only in that 'one isolated respect' .... We decline to extend *Stern's* limited holding herein.").

[61] *Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S.655, 135 S. Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("*Sharif* contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be express. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent . . . .").

[62] ECF No. 11.

judgment. These circumstances unquestionably constitute implied consent. Thus, this Court wields the constitutional authority to enter a final order here.

## IV.  ANALYSIS

Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition."[63] The United States Supreme Court has distinguished between "false pretenses and representations" and "actual fraud," and recognized two distinct paths for nondischargeability under § 523(a)(2)(A).[64] Additionally, there are two distinct issues to consider in the dischargeability analysis: (a) the establishment of the debt itself, under relevant state or non-bankruptcy federal law; and (b) a determination as to the nature of the debt—i.e. whether it is dischargeable or nondischargeable.[65] The Court will consider each in turn.

### A. Establishment of the Debt

The Plaintiff has the initial burden of establishing the underlying debt.[66] Plaintiff's non-dischargeability claim against Debtors stems from the breach of an alleged oral contract to build the Barndominium.[67] The Court will address the breach of contract claim against Mr. and Mrs. Bortz separately.

---

[63] *See* 11 U.S.C. § 523(a)(2)(A).

[64] *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 136 S. Ct. 1581, 1586, 194 L.Ed.2d 655 (2016).

[65] *Resolution Trust Corp. v. McKendry (In re McKendry)*, 40 F.3d 331 (10th Cir. 1994) (noting that there are two distinct issues in a nondischargeability proceeding); *Winn v. Holdaway (In re Holdaway)*, 388 B.R. 767, 782 (Bankr. S.D. Tex. 2008) ("The underlying cause creating the pre-petition debt must not be confused with the characterization of debts excepted from discharge."); *Estate of Smith v. Smith (In re Smith)*, 495 B.R. 291, 297 (Bankr. N.D. Miss. 2013) (holding that a claim must first be established under relevant state or non-bankruptcy law and only then does the federal nondischargeability issue come into play); *King v. Skolness (In re King)*, 624 B.R. 259, 287 (Bankr. N.D. Ga. 2020) ("The first step is to determine whether a debt exists. If the debtor owes a debt to the plaintiff, the second step is to determine the nature of the debt—i.e. whether it is dischargeable or nondischargeable.").

[66] *In re Holdaway*, 388 B.R. at 779.

[67] ECF No. 1. *See Curtis v. Cerner Corp.*, 621 B.R. 141, 171 (S.D. Tex. 2020) ("'The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself the action sounds in contract

Texas law applies because all the parties reside in Texas and the alleged formation and breach of contract occurred in Texas.[68] To prevail on his breach of contract claim, Plaintiff must prove, by a preponderance of the evidence: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach by the defendants; and (4) damages sustained as a result of that breach."[69]

### 1. Formation and breach of oral contract between Plaintiff and Mr. Bortz

The requirements for contract formation are the same for both oral and written contracts.[70] To establish the existence of a valid contract, there must be: "(1) an offer; (2) acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding."[71] When determining whether an oral contract exists, the Court "looks to the communications between the parties and to the acts and circumstances surrounding those communications."[72] The terms of an oral contract must be clear, certain and definite.[73] However, a contract need only be definite and certain as to those terms that are "material and essential" to the parties' agreement.[74] "Material and essential terms are those that parties would reasonably regard as 'vitally important ingredient[s]' of

---

alone.' '[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit.'").

[68] *See ASARCO LLC v. Americas Min. Corp.*, 382 B.R. 49, 62 (S.D. Tex. 2007) ("In applying the Restatement's 'most significant relationship test', this Court considers the following factors: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered."); *Enigma Holdings, Inc. v. Gemplus Int'l S.A.*, No. 3:05 CV 1168 B, 2006 WL 2859369, at *7 (N.D. Tex. Oct. 6, 2006) ("Texas courts decide choice of law issues by using the Restatement's 'most significant relationship' test.").

[69] *Cnty. Real Est. Venture v. Farmers & Merchants Bank of Long Beach*, No. 01-13-00530-CV, 2015 WL 591646, at *2 (Tex. App. Feb. 12, 2015).

[70] *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 258 (Tex. App. 2018).

[71] *Id.*

[72] *Id.*

[73] *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied).

[74] *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016).

their bargain" and are determined on a case-by-case basis.[75] A contract must at least be definite enough to show that the parties actually intended to enter into a contract and have sufficiently definite terms to "'enable a court to understand the parties' obligations,' and to give 'an appropriate remedy' if they are breached."[76] "Although Texas courts favor validating contracts, we may not create a contract where none exists."[77] A formation of a contract may be implied from the conduct of parties recognizing the existence of a contract.[78] The question of contract formation is "based upon the meaning reasonably conveyed by the parties' actions and words rather than their uncommunicated subjective intentions."[79]

Here, Plaintiff asked Mr. Bortz to build him the Barndominium.[80] After Plaintiff and Mr. Bortz had extensive discussions about the Barndominium, Mr. Bortz requested money so that he could execute on the design plans.[81] Plaintiff asserts that he made progress on the Barndominium and that he intended to finish construction.[82] These actions show that both parties intended to enter into an oral contract.[83] There are also sufficiently definite terms to establish the formation of the oral contract. Namely, Mr. Bortz promised that the $176,000 he requested would cover the costs of steel, concrete and a down payment to Mr. Dowdell for road construction.[84] Plaintiff and Mr. Bortz agreed on many specifications of the Barndominium which were drawn out.[85] Although some details are unclear, such as the final price for the Barndominium, when the actions of the

---

[75] *Id.*
[76] *Id.*
[77] *Lamajak, Inc. v. Frazin*, 230 S.W.3d 786, 793 (Tex. App. 2007).
[78] *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 73 (Tex. App. 2010).
[79] *Id.*
[80] ECF No. 47 at 13, 18.
[81] ECF Nos. 47 at 19–20, 25, 29, 43; 24-2.
[82] ECF Nos. 24-3 at 1; 47 at 47–48, 53, 56; 48 at 6–10, 95–97.
[83] *Fischer v. CTMI, L.L.C.*, 479 S.W.3d at 240 ("[P]art performance under an agreement may remove uncertainty and establish that a contract enforceable as a bargain has been formed.").
[84] ECF No. 47 at 25–26, 48, 59.
[85] ECF Nos. 47 at 19–20, 25, 29, 43; 24-2.

parties show that they have "intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon[,] . . . courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain."[86] Indeed, courts may imply terms that may be reasonably inferred to avoid forfeiture of a contract.[87] Thus, the Court finds that the terms of oral contract are definite enough to enable the Court to determine the obligations of each party and award appropriate remedies if they are breached.[88] The Court thus finds a valid oral contract between Plaintiff and Mr. Bortz. The Court will now determine Mr. Bortz's obligations under the oral contract and whether Mr. Dowdell was Mr. Bortz's subcontractor.

"By definition, a subcontractor enters into an agreement with a contractor, rather than the principal party whose performance is payment in exchange for the provision of goods or services or the completion of a project."[89] "In other words, . . . a subcontractor relationship exists when Party A (principle party) contracts with Party B (contractor) for certain work, and in turn, Party B (contractor) contracts with Party C (subcontractor) to perform a portion of the work for which the Party A contracted with Party B."[90] Whether Mr. Dowdell was Mr. Bortz's subcontractor is determined based on an "objective standard of what the parties said and did rather than on their subjective states of mind."[91]

Here, both Mr. Bortz and Mr. Dowdell believed that Mr. Dowdell was an independent contractor who contracted directly with Plaintiff for road construction and dirt work.[92] This belief

---

[86] *Fischer v. CTMI, L.L.C.*, 479 S.W.3d at 239 (citing Restatement (Second) of Contracts § 33 (1981)).
[87] *See e.g., Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex.1966); *Tanenbaum Textile Co. v. Sidran*, 423 S.W.2d 635, 637 (Tex. Civ. App. 1967).
[88] *Fischer*, 479 S.W.3d at 240 ("The law favors finding agreements sufficiently definite for enforcement, 'particularly . . . where one of the parties has performed his part of the contract.'").
[89] *Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co*., 448 F.3d 760, 778 (5th Cir.), *amended on reh'g*, 453 F.3d 652 (5th Cir. 2006) (citing BLACK'S LAW DICTIONARY 1464 (8th ed.2004)).
[90] *MDC Energy, LLC v. Crosby Energy Servs., Inc.*, No. 4:22-CV-03175, 2024 WL 4329028, at *5 (S.D. Tex. Aug. 16, 2024).
[91] *Hawkins v. Myers*, No. 02-14-00123-CV, 2015 WL 1646812, at *6 (Tex. App. Apr. 9, 2015).
[92] *See* ECF Nos. 48 at 154, 155; 6.

was consistent with the parties' actions.[93] Specifically, Plaintiff received invoices directly from Mr. Dowdell or Kelly Consulting and Plaintiff paid most of them directly to Mr. Dowdell.[94] Although Mr. Dowdell received a $21,000 payment from Mr. Bortz, Mr. Dowdell and Mr. Bortz understood such payment to be made merely on behalf of Plaintiff.[95] Mr. Bortz did not supervise any of Mr. Dowdell's road construction and dirt work.[96] Mr. Dowdell even met directly with Plaintiff in person to discuss the scope of the dirt work and road construction.[97] As there was no meeting of the minds between Mr. Bortz and Mr. Dowdell to enter into a contract, the Court finds there was no contract between Mr. Bortz and Mr. Dowdell and therefore, Mr. Dowdell was not Mr. Bortz's subcontractor.[98] Accordingly, the Court finds that Mr. Bortz did not have an obligation to complete the road construction and dirt work needed for the Barndominium.[99] Plaintiff paid $176,000 to Mr. Bortz after Mr. Bortz promised he would use those funds to construct the concrete foundation of the Barndominium.[100] $21,000 out of the $176,000 was transferred to Mr. Dowdell as a down payment for his work.[101] Thus, the Court finds Plaintiff and Mr. Bortz entered into an oral contract for the construction of the Barndominium that obligated Mr. Bortz to complete the concrete foundation of the Barndominium in exchange for $155,000.

---

[93] *See Alice Leasing Corp. v. Castillo*, 53 S.W.3d 433, 440 (Tex. App. 2001) ("When no written contract between the parties delineates the right of control, it must necessarily be determined from the facts and circumstances of the project.").
[94] ECF Nos. 24-2 at 45, 89, 90; 48 at 130, 134.
[95] ECF No. 48 at 18–20, 148.
[96] ECF No. 126 at 48.
[97] ECF No. 48 at 121, 122.
[98] *Hawkins v. Myers*, No. 02-14-00123-CV, 2015 WL 1646812, at *6 (Tex. App. Apr. 9, 2015). ("The parties must have a meeting of the minds and must communicate consent to the essential terms.").
[99] *See Texaco Expl. & Prod., Inc. v. AmClyde Engineered Prods. Co*., 448 F.3d 760, 778 (5th Cir.), *amended on reh'g*, 453 F.3d 652 (5th Cir. 2006).
[100] ECF No. 47 at 25–26, 48, 59.
[101] ECF No. 48 at 18–20, 148.

The Court will now consider whether Mr. Bortz breached his contract with Plaintiff.[102] "A breach occurs when a party fails or refuses to do something he has promised to do."[103] Any breach, even a nonmaterial breach, may give rise to a claim for damages.[104] Mr. Bortz never completed or substantially started the concrete foundation for the Barndominium after Plaintiff paid him $155,000.[105] Accordingly, the Court finds that Mr. Bortz breached his oral contract with Plaintiff to build the Barndominium.

### 2. Damages for Mr. Bortz's breach of the oral contract with Plaintiff

Under Texas law, a plaintiff who prevails under a breach of contract claim is entitled to just compensation for the loss or damage actually sustained.[106] "A nonbreaching party is generally entitled to all actual damages necessary to put it in the same economic position in which it would have been had the contract not been breached."[107] This is known as the "benefit of the bargain," which represents the "difference between the value expected from the contract and the value actually received by the non-breaching party."[108] "A plaintiff has a duty to mitigate when damages can be avoided by the plaintiff's reasonable efforts made at a 'trifling expense or with reasonable exertions.'"[109] The party who caused the loss bears the burden of proving that the plaintiff failed to mitigate damages, and the amount that damages would have been reduced if the plaintiff did so.[110] Additionally, a plaintiff may recover consequential damages if the parties contemplated, at the time of contract formation, that such damages would be a probable result of the breach.[111]

---

[102] ECF No. 1.

[103] *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App. 2006).

[104] *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.,* 518 S.W.3d 432, 436 (Tex. 2017).

[105] ECF Nos. 48 at 18–22; 47 at 86.

[106] *Stamp–Ad, Inc. v. Barton Raben, Inc.*, 915 S.W.2d 932, 936 (Tex.App.—Houston [1st Dist.] 1996, no writ).

[107] *Abraxas Petroleum Corp. v. Hornburg*, 20 S.W.3d 741, 760 (Tex. App. 2000).

[108] *Tennessee Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at *5 (Tex. App. Aug. 21, 2008).

[109] *U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc*., 104 S.W.3d 284, 293 (Tex. App. 2003).

[110] *Id.*

[111] *Jatex Oil & Gas Expl. L.P. v. Nadel & Gussman Permian, L.L.C.*, 629 S.W.3d 397, 414 (Tex. App. 2020).

Consequential damages are those that result "naturally, but not necessarily, from a party's breach of contract."[112] Consequential damages must be foreseeable and directly traceable to the breach and result from it.[113] The amount of damages may be limited by an agreement that the parties may have had with respect to damages.[114]

As to the first $100,000 paid by Plaintiff, Mr. Bortz transferred $21,000 as a down payment to Mr. Dowdell for road construction and dirt work.[115] Mr. Bortz did not refund nor was he able to account for the remaining $79,000.[116] As for the $11,000 Plaintiff paid for the purchase of a mini excavator, Mr. Bortz has not shown what work he performed on the Barndominium using that mini excavator and Plaintiff never received any of the $10,000 in the sale proceeds of the mini excavator.[117] Next, no concrete was ever poured or purchased with the $65,000 that was promised by Mr. Bortz to cover concrete costs.[118] As such, out of the $176,000 transferred to Mr. Bortz or Fireside, Plaintiff only received only $21,000 worth of value by way of the down payment to Mr. Dowdell.[119] Thus, the Court finds that out of the $176,000 that Plaintiff paid, Plaintiff is entitled to $155,000 in damages that resulted from Mr. Bortz's breach.[120]

Plaintiff is also seeking an additional $51,466.40 in damages from Defendants for amounts paid to Mr. Dowdell.[121] As explained *supra*, the Court found that Mr. Dowdell was not a subcontractor of the Defendants and that Mr. Bortz did not have an obligation under his oral contract with Plaintiff to construct the road.[122] Moreover, Mr. Dowdell credibly testified to the

---

[112] *Id.*
[113] *Tennessee Gas Pipeline Co.*, No. 01-06-00535-CV, 2008 WL 3876141, at *6.
[114] *Id.*
[115] ECF No. 48 at 18–20, 146.
[116] ECF Nos. 48 at 95–96; 47 at 92.
[117] ECF No. 48 at 34–35, 42.
[118] ECF No. 48 at 21-22.
[119] ECF No. 48 at 18–20, 146.
[120] *Borkert v. Tworek*, No. 04-16-00529-CV, 2018 WL 842981, at *2 (Tex. App. Feb. 14, 2018).
[121] ECF Nos. 1; ECF No. 48 at 161.
[122] *See supra* Section IV.A.1.

work he did that is detailed in his invoices.[123] Plaintiff admits that Mr. Dowdell performed some work on the construction site.[124] Thus, given that Mr. Dowdell was not a subcontractor of Defendants and that Mr. Dowdell performed the work he was paid to do, the Court finds that Plaintiff is not entitled to damages for the $51,466.40 paid to Mr. Dowdell.[125]

Finally, Plaintiff seeks damages of $22,069.10 that he asserts he paid directly to third party vendors for the Fixtures.[126] Plaintiff only provided an invoice or receipt for his purchase of the iron doors in the amount of $4,995.[127] Thus, the Court finds that Plaintiff has met his evidentiary burden of proving up the amount he paid for iron doors but failed to meet his evidentiary burden of proving up the $17,074.10 he allegedly spent on the other Fixtures.[128] Since Mr. Bortz assured Plaintiff that he would install the iron doors in the Barndominium, it was foreseeable to Mr. Bortz that the Plaintiff would purchase the iron doors and that they would be useless to Plaintiff without the completed Barndominium.[129] Moreover, Plaintiff's physical disability and the customized nature of the iron doors prevents Plaintiff from recouping the costs of the iron doors without incurring significant expenses and burden.[130] Thus, Mr. Bortz's breach caused $4,995 in damages to Plaintiff.[131]

Accordingly, Mr. Bortz is liable for damages to Plaintiff in the amount of $159,995 based on his breach of the oral contract to build Plaintiff the Barndominium.

### 3.  Whether Mr. Bortz has a valid affirmative defense

---

[123] ECF Nos. 47 at 47; 48 at 125–130, 134.

[124] ECF No. 47 at 47, 51.

[125] *Cnty. Real Est. Venture v. Farmers & Merchants Bank of Long Beach*, No. 01-13-00530-CV, 2015 WL 591646, at *2 (Tex. App. Feb. 12, 2015) (requiring contract formation and breach to recover damages for breach of contract).

[126] ECF No. 47 at 68, 69, 80.

[127] ECF No. 24-3 at 4.

[128] *Gulf Coast Inv. Corp. v. Rothman,* 506 S.W.2d 856, 858 (Tex. 1974) ("While mathematical precision is not required to establish the extent or amount of one's damages, one must bring forward the best evidence of the damage of which the situation admits, and there must be some basis for reasonable inferences.").

[129] ECF No. 47 at 68, 69.

[130] ECF No. 47 at 20–22, 70–71.

[131] *See Tennessee Gas Pipeline Co. v. Technip USA Corp.*, No. 01-06-00535-CV, 2008 WL 3876141, at *6 (Tex. App. Aug. 21, 2008).

As an affirmative defense, Defendants assert that, at all relevant times, they were acting as agents for Fireside and therefore any debt owed to Plaintiff is owed by Fireside and not Defendants.[132] Plaintiff asserts that Defendants have judicially admitted that the debt arising from the oral contract is owed by Defendants individually, not by Fireside.[133]

A judicial admission is not evidence itself but instead serves to withdraw a fact from contention.[134] In contrast, evidentiary admissions may be controverted or explained by the party.[135] Factual assertions in pleadings and pretrial orders are generally considered to be judicial admissions conclusively binding on the party who made them.[136] "Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions."[137] "When a judicial admission regarding the ultimate issue occurs, it removes the ultimate issue from further consideration."[138] Therefore, "the judicial admission negates the existence of a material fact regarding the ultimate issue so completely that it conclusively establishes the movant's right to judgment as a matter of law."[139]

To qualify as a judicial admission, a statement must be "(1) made in a judicial proceeding; (2) contrary to a fact essential to the theory of recovery; (3) deliberate, clear, and unequivocal; (4) such that giving it conclusive effect meets with public policy; and (5) about a fact on which a judgment for the opposing party can be based."[140] The Court will address each of these elements.

---

[132] ECF No. 6 at 3.
[133] ECF No. 1.
[134] *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).
[135] *Id.* at 477.
[136] *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).
[137] *Rex-Tech Int'l, LLC v. Rollings* (*In re Rollings*), 451 F. App'x 340, 348 (5th Cir. 2011).
[138] *In Int. of N.L.W.*, 534 S.W.3d 102, 112 (Tex. App. 2017).
[139] *Id.*
[140] *Heritage Bank v. Redcom Labs., Inc.*, 250 F.3d 319, 329 (5th Cir. 2001).

Debtors' Scheduled Debt of $140,000 is listed as undisputed, liquidated and noncontingent.[141] The Scheduled Debt is also listed as owed by "Debtor 1 and Debtor 2 only."[142] Debtors list Fireside as a co-debtor and list the debts which Fireside is a co-debtor for.[143] The Scheduled Debt is excluded from that list.[144] Mr. Bortz's testimony at trial also confirmed the Scheduled Debt pertains to debt stemming from the failure to construct the Barndominium.[145] Thus, by listing the Scheduled Debt, Mr. Bortz has made a deliberate, clear, and unequivocal statement in a judicial proceeding that the debt he owes to Plaintiff, which stems from the failed Barndominium construction, is owed by Mr. Bortz in his individual capacity, and not by Fireside. This statement is contrary to Defendants' theory of affirmative defense because if in fact Defendants are shielded by Fireside's corporate veil, as Debtors assert, Mr. Bortz would not owe any debt to Plaintiff in his individual capacity.[146] Giving the Scheduled Debt conclusive effect is consistent with public policy because it promotes the complete and accurate disclosure of information on bankruptcy schedules and statements, which is of utmost importance to the bankruptcy process.[147] Finally, the Scheduled Debt pertains to a fact on which a judgment for Plaintiff can be based on because Plaintiff's right to recovery depends on whether Plaintiff contracted with Mr. Bortz or Fireside.[148]  Thus, the Court finds that the Scheduled Debt is a judicial admission by Debtors that Mr. Bortz was not acting as Fireside's agent when contracting with Plaintiff for the Barndominium construction.

---

[141] ECF No. 24-1 at 27.

[142] ECF No. 24-1 at 27.

[143] ECF No. 24-1 at 45.

[144] ECF No. 24-1 at 45.

[145] *See e.g.,* ECF No. 48 at 43.

[146] *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006) ("A bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's contractual obligations.").

[147] *Shinhan Bank Am.* v. *Kim* (*In re Kim*), Nos. 10-66727-JRS, 10-06500-JRS, 2011 Bankr. LEXIS 4369, at *18-19 (Bankr. N.D. Ga. Oct. 26, 2011.).

[148] *See Griffin v. Superior Ins. Co.*, 161 Tex. 195, 202, 338 S.W.2d 415, 419 (1960); ECF Nos. 1; 6.

Accordingly, the Court deems it appropriate to enter a judgement in the amount of $159,995 in favor of Plaintiff and against Mr. Bortz for breach of contract.

### 4.  Whether Mrs. Bortz owes any debt to Plaintiff

As explained, the Scheduled Debt qualifies as a judicial admission.[149] Therefore, Mrs. Bortz is estopped from denying the existence of the Scheduled Debt.[150] However, Plaintiff presented no independent evidence to establish a debt against Mrs. Bortz.[151] Therefore, the Court finds that the amount of debt owed by Mrs. Bortz to Plaintiff is limited to $140,000.[152]

## B.  Determination of the dischargeability of Debtors' debt owed to Plaintiff

Plaintiff asserts the false representations and actual fraud theories under § 523(a)(2)(A).[153] The Court will address each in turn.

### 1.  Actual fraud

To prevail on an actual fraud claim under §523(a)(2)(A), the Plaintiff must demonstrate that: (a) the debtor made representations; (b) at the time they were made the debtor knew they were false; (c) the debtor made the representations with the intention and purpose to deceive the creditor; (d) that the creditor relied on such representations; and (e) that the creditor sustained losses as a proximate result of the representations.[154]

#### a.  False statements with intent to deceive.

"'A misrepresentation is fraudulent if the maker ... knows or believes ... the matter is not as' represented, or 'does not have the confidence in the accuracy of his representation' as stated or

---

[149] *See supra* Section IV.A.3.
[150] *In re Sissom*, 366 B.R. 677, 697 (Bankr. S.D. Tex. 2007).
[151] *See Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 228 (5th Cir.2005) ("It is the obligation of the party to direct the court's attention to the facts and law supporting its argument . . .  [and] failure to raise the argument properly before the district court [relieves] our obligation to address it.").
[152] *See Rex-Tech Int'l, LLC v. Rollings* (*In re Rollings*), 451 F. App'x 340, 348 (5th Cir. 2011).
[153] ECF No. 1.
[154] *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

implied, or 'knows ... he does not have the basis for his representation' as stated or implied."[155] When considering whether a knowing and fraudulent representation was made, Courts looks to the subjective mindset of the defendant. [156] "A representation of the maker's own intention to do . . . a particular thing is fraudulent if he does not have that intention."[157] Courts recognize that circumstantial evidence may be used to establish the debtor's subjective intent as it most commonly cannot be proved by direct evidence.[158] Reckless indifference to the truth can be sufficient to establish intent to deceive under § 523(a)(2)(A).[159]

As to the first $100,000 Plaintiff paid, Mr. Bortz represented to Plaintiff that the $100,000 would cover the costs of steel, concrete and a $35,000 down payment to Mr. Dowdell.[160] Mr. Bortz only paid $21,000 to Mr. Dowdell instead of $35,000.[161] Mr. Bortz testified that the remaining $79,000 was spent on other "costs" but he could not recall specifically what those other costs were.[162] The only expense Mr. Bortz incurred for steel totaled $6,898.55 and was incurred July 8, 2021 and July 19, 2021, which is before Plaintiff engaged Mr. Bortz for the Barndominium.[163] Given that Mr. Bortz paid less than $35,000 to Mr. Dowdell and that he did not use the money to procure any steel or is otherwise able to account for most of the $100,000, the Court finds that Mr. Bortz's representation as to the purpose of the $100,00 draw request was knowingly false.[164]

---

[155] *In re Mercer*, 246 F.3d 391, 407 (5th Cir. 2001).
[156] *See e.g., In re Rifai*, 604 B.R. 277, 308 (Bankr. S.D. Tex. 2019); *Higgins v. Nunnelee* (*In re Nunnelee*), 560 B.R. 277, 285 (Bankr. N.D. Miss. 2016).
[157] *In re Mercer*, 246 F.3d at 407; *In re Melancon*, 223 B.R. 300, 319 (Bankr. M.D. La. 1998) ("If one asserts the intent to do something, but does not have that intention, then two things follow. First, the assertion is false. Second, the person asserting the intention knows that the assertion is false, since one always knows his present intentions.").
[158] *See e.g., In re Burk*, 583 B.R. 655, 666 (Bankr. N.D. Miss. 2018); *Caspers v. Van Horne* (*In re Van Horne*), 823 F.2d 1285, 1287–88 (8th Cir. 1987).
[159] *Matter of Norris*, 70 F.3d 27, 31 (5th Cir. 1995).
[160] ECF No. 47 at 25–26.
[161] ECF No. 48 at 18–20, 146.
[162] ECF No. 48 at 18–20.
[163] ECF Nos. 48 at 13, 14, 18–20; 24-2 at 1–4.
[164] ECF No. 48 at 18–20, 146.

As to the second draw request of $11,000, Mr. Bortz represented to Plaintiff that he would use the $11,000 to purchase a mini excavator that was needed for the Barndominium.[165] Mr. Bortz asserts that the mini excavator was purchased but there is no evidence that work was completed using that mini excavator.[166] In fact, Mr. Dowdell performed work on the construction site with his own mini excavator and charged Plaintiff for the use of that mini excavator despite Plaintiffs $11,000 payment to Mr. Bortz.[167] Mr. Bortz testified that he eventually sold the mini excavator for $10,000 but none of the $10,000 was ever given back to Plaintiff.[168] Given the lack of utility of Mr. Bortz's mini excavator and its subsequent sale, with no sale proceeds being refunded to Plaintiff, the Court finds that Mr. Bortz's representation as to the purpose of the $11,000 draw request was knowingly false.[169]

As to the last draw request, Mr. Bortz represented to Plaintiff that if Plaintiff did not immediately pay $65,000, progress on the construction would pause and that he was ready to use that money on concrete pouring.[170] However, at the time of this representation, the requisite amount of steel was not purchased; the pad where the concrete foundation was to be poured was not finished; and the rebar and lumber that was needed to pour the concrete was not properly installed.[171] The Court thus finds that Mr. Bortz knowingly misrepresented the status of the Barndominium construction to Plaintiff.  Mr. Bortz also admits that none of $65,000 was used to pay for the concrete costs.[172] Thus, given that Mr. Bortz made false statements regarding the status

---

[165] ECF Nos. 47 at 29, 30; 24-4 at 3.
[166] ECF No. 48 at 34–35.
[167] ECF Nos. 24-2 at 45; 48 at 140–141.
[168] ECF No. 48 at 34–35, 42.
[169] ECF No. 48 at 34–35, 42.
[170] ECF No. 47 at 59–60. ECF Nos. 24-3 at 1; 47 at 47–48, 53, 56, 59–60.
[171] ECF Nos. 47 at 62, 63; 24-2 at 91; 48 at 146.
[172] ECF No. 48 at 21-22.

of the Barndominium and that the $65,000 was not actually used for concrete or related costs, the

Court finds that Mr. Bortz knowingly misrepresented the purpose of the $65,000 draw request.[173]

Mr. Bortz's claim that he intended to eventually finish construction, but that it was delayed

due to design changes and weather, does not explain why most of the $176,000 received from

Plaintiff was not spent on the construction or otherwise unaccounted for.[174] Nor does it explain

Mr. Bort's inaccurate statements regarding the status of the Barndominium construction or his

failure to refund Plaintiff any of his money[175] Thus, the Court finds that Mr. Bortz never intended

to carry out his promise made to Plaintiff that he would construct the Barndominium and that Mr.

Bortz misrepresented his intent and purpose of the draw requests with the intent to deceive Plaintiff

out of his money.[176]

### b.   Actual and justified reliance

Actual fraud requires that the plaintiff show actual and justifiable reliance.[177] Actual

reliance, which is equivalent to causation-in-fact,  requires  a showing that a plaintiff's reliance

was "a substantial factor in determining the course of conduct that results in his loss."[178] The

standard for actual reliance is a low bar: a plaintiff must merely prove that he "in fact relied upon

the representations of the debtor."[179]

---

[173] ECF Nos. 48 at 21-22; 47 at 62, 63; 24-2 at 91.

[174] *See e.g.* ECF No, 48 at 18-22, 95–97.

[175] ECF Nos. 48 at 96; 47 at 92; *In re Burk*, 583 B.R. 655, 666 (Bankr. N.D. Miss. 2018), ("If the debtor offers an unsupported assertion of honest intent, the Court must determine whether the debtor's actions 'appear so inconsistent with [their] self-serving statement of intent that the proof leads the court to disbelieve the debtor.'").

[176] *In re Salzillo*, No. 12-51516-CAG, 2013 WL 4525199, at *3 (Bankr. W.D. Tex. Aug. 27, 2013) ("Parties may infer intent to deceive from 'reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation.'").

[177] *In re Arnette*, 454 B.R. 663, 687 (Bankr. N.D. Tex. 2011); *In re Cross*, 653 B.R. 362, 377 (Bankr. E.D. Tex. 2023).

[178] *In re Mercer*, 246 F.3d 391, 413 (5th Cir. 2001).

[179] *Id.*

Mr. Bortz promised Plaintiff that he would build him the Barndominium and Plaintiff transferred $176,000 to Mr. Bortz with the believe that it would be used for the Barndominium construction.[180] The Court thus finds that there is actual reliance by Plaintiff.[181]

Justifiable reliance requires that "the existence of the intention is material and the recipient has reason to believe that it will be carried out."[182] Justifiable reliance requires a reasonable reliance but is a subjective standard that is more relaxed than the objective reasonable reliance standard.[183] A investigation by a plaintiff into the truth of a debtor's representations is not required unless the falsehood is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." [184]

Here, Mr. Bortz was Plaintiff's uncle and had experience in turnkey home construction projects and owned a construction company.[185] After Plaintiff transferred money to Mr. Bortz, Mr. Bortz sent pictures to Plaintiff to show Plaintiff that progress was being made, such as pictures showing the clearing of trees and of equipment on the construction site.[186] At the time of construction, Plaintiff lived away from the construction site and was disabled, which impaired Plaintiff's ability to monitor the project.[187] Thus, since Plaintiff's ability to monitor the project was impaired and there was no signs to not trust Mr. Bortz at the time Plaintiff transferred money, the Court finds that Plaintiff's reliance was justified.[188]

### c. Injury

---

[180] *See e.g.,* ECF No. 47 at 50–52, 56.
[181] *See In re Mercer*, 246 F.3d at 413.
[182] *Id.* at 416.
[183] *In re Cross*, 653 B.R. 362, 377 (Bankr. E.D. Tex. 2023).
[184] *In re Hurst*, 337 B.R. 125, 133–34 (Bankr. N.D. Tex. 2005).
[185] ECF No. 47 at 13.
[186] *See* ECF No. 24-2 at 71–80.
[187] ECF No. 47 at 44.
[188] *See In re Hurst*, 337 B.R. at 133–34.

The last requirement of actual fraud under § 523(a)(2)(A) is that Plaintiff sustained a loss as a proximate result of Mr. Bortz's misrepresentations.[189] This requires a showing that the misrepresentations were the "proximate cause of the injury—i.e., they foreseeably could have produced the injury that the Plaintiff suffered."[190] As explained *supra*, Plaintiff suffered $159,995 in damages based on Mr. Bortz failure to construct the Barndominium.[191] These damages were foreseeable because Mr. Bortz made knowingly false statements to Plaintiff regarding his intent to perform and the purpose of the draw requests with an intent to device Plaintiff out of his money.[192]

Accordingly, the Court finds that Mr. Bortz's judgement debt owed to Plaintiff in the amount of $159,995 is excepted from discharge as a debt for money or property obtained by actual fraud pursuant to 11 U.S.C. § 523(a)(2)(A).

### 2. False representation

To prove false representations under § 523(a)(2)(A), a plaintiff must demonstrate "(1) [a] knowing and fraudulent falsehood [ ], (2) describing past or current facts, (3) that [was] relied upon by the other party."[193] A plaintiff must also prove the amount of its damages caused by the false representation.[194] In contrast to a claim for actual fraud, the Fifth Circuit has held that a false representation under § 523(a)(2)(A) must "encompass statements that falsely purport to depict current or past facts."[195] Misrepresentations concerning a past or current fact of the debtor's future intention will satisfy this element.[196]A misrepresentation by a debtor of his or her intention to

---

[189] *In re Rifai*, 604 B.R. 277, 321 (Bankr. S.D. Tex. 2019).
[190] *Id.*
[191] *See supra* Section IV.A.2.
[192] *See supra* IV.B.1.a.
[193] *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).
[194] *Jacobson v. Ormsby (In re Jacobson)*, No. 06-51460, 2007 WL 2141961, at *2 (5th Cir. July 26, 2007).
[195] *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991).
[196] *In re Allison*, 960 F.2d at 484 ("A debtor's misrepresentations of his intentions, however, may constitute a false representation within the meaning of the dischargeability provision if, when the representation is made, the debtor has no intention of performing as promised.").

perform contractual duties, for example, may be a false representation under the Bankruptcy Code.[197] This intent may be inferred from the fact that the debtor failed to take any steps to perform under the agreement.[198] As explained *supra*, the Court has found that Mr. Bortz made knowing and fraudulent falsehoods that was relied upon by Plaintiff and caused damages to Plaintiff.[199] Moreover, these falsehoods pertained to current or past facts because Mr. Bortz misrepresented the present status of the construction and his intent to build the Barndominium.[200]

     Accordingly, the Court finds that Mr. Bortz's judgement debt owed to Plaintiff in the amount of $159,995 is excepted from discharge as a debt for money or property obtained by a false representation pursuant to 11 U.S.C. § 523(a)(2)(A).

### 3.   Whether Mr. Bortz's wrongdoing is imputed to Mrs. Bortz under *Bartenwerfer*

     Given the Supreme Court's recent decision in *Bartenwerfer v. Buckley*,  the Court must now decide whether the actual fraud and false representations by Mr. Bortz may be imputed to Mrs. Bortz.[201]

     In *Bartenwerfer*, the husband and wife co-debtors bought a house together to renovate and resell.[202] The husband managed the project and finances, while the wife remained uninvolved.[203] When the creditor purchased the home, both co-debtors claimed they had disclosed all important information, which turned out to be false.[204] The creditor sued the co-debtors in state court and

---

[197] *Nat'l Diversity Council v. Carter (In re Carter)*, Nos. 17-35082, 17-03446, 2018 WL 6060391, at *23, 2018 Bankr. LEXIS 3636, at *62 (Bankr. S.D. Tex. 2018).

[198] *Id.*; *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191, 199 (Tex. App.—Houston [1st Dist.] 2014) ("The speaker's intent at the time of the representation may be inferred from the speaker's acts after the representation was made."); *In re Rubin*, 875 F.2d 755, 759 (9th Cir. 1989) ("[A] promise made with a positive intent not to perform or without a present intent to perform satisfies § 523(a)(2)(A).").

[199] *See supra* Section IV.B.1.

[200] *See supra* Section IV.B.1.a.

[201] *See Bartenwerfer v. Buckley*, 598 U.S. 69 (2023).

[202] *Id.* at 72.

[203] *Id.*

[204] *Id.*

obtained a joint judgement against the co-debtors for breach of contract, negligence, and nondisclosure of material facts.[205] The Supreme held the wife's debt to be non-dischargeable regardless of her own culpability because she was liable for her husband's fraud.[206] The Supreme Court reasoned that § 523(a)(2)(A) which is "written in the passive voice, . . . turns on how the money was obtained, not who committed fraud to obtain it."[207] However, the Supreme Court also clarified that "§ 523(a)(2)(A) does not define the scope of one person's liability for another's fraud."[208] Rather, it "is the function of the underlying law" that determine liability.[209] Thus, if state law or applicable non-bankruptcy law does not extend liability to the honest debtor, "§523(a)(2)(A) would have no role to play."[210]

Unlike in *Bartenwerfer*, there is no state court judgment here containing a finding of partnership or agency between the Debtors.[211] Nor has Plaintiff provided any evidence or arguments to demonstrate that Mrs. Bortz was Mr. Bortz's partner or agent or that she was vicariously liable for Mr. Bortz's fraudulent actions.[212] Even a finding that Debtors are jointly and severally liable for damages to Plaintiff, in itself, is not enough to show an agency or partnership relationship or that one of the Debtors is vicariously liable for the actions of the other.[213]

Accordingly, the Court finds that *Bartenwerfer* does not extend liability under §523(a)(2)(A) to Mrs. Bortz. As such, the $140,000 of debt owed by Mrs. Bortz is not excepted from discharge for false representations or actual fraud under § 523(a)(2)(A).

---

[205] *Id.* at 73.
[206] *Id.* at 82.
[207] *Id.* at 72.
[208] *Id.* at 82.
[209] *Id.*
[210] *Id.*
[211] *Id.* at 73.
[212] *See In re Koh Lee,* Nos. 22-70367-reg, 22-08045-reg, 2024 Bankr. LEXIS 720, at *37 (Bankr. E.D.N.Y. Mar. 25, 2024) ("In *Bartenwerfer v. Buckley*, the liability had already been found by a pre-petition judgment. Here, we have no such finding, and this Court is not prepared to make such a finding based on the record in this case.").
[213] *In re Sharp*, No. 22-30854, 2024 WL 2819674, at *8 (Bankr. N.D. Ohio June 3, 2024).

**4.   Whether Plaintiff is entitled to attorney's fees and suit costs**

Plaintiff has also made a request for attorney's fees and suit costs.[214] Under, Texas Civil Practice & Remedy Code § 38.001(1), a person may recover reasonable attorney's fees from an individual in addition to the amount of a valid claim and costs, if the claim is for a breach of an oral or written contract.[215] "If the plaintiff prevails on a breach-of-contract claim and recovers damages, an award of reasonable attorney's fees is mandatory, and 'the trial court has no discretion to deny them.'"[216] To recover the requested fees and costs, Plaintiff bore the burden of establishing the reasonableness and necessity of the fees and costs.[217] Plaintiff has prevailed on his breach of contract claim against Debtors. The Court thus grants Plaintiff's request for reasonable attorney's fees and suit costs pursuant to Texas Civil Practice & Remedy Code § 38.001(1). The Court will enter a Judgement inviting Plaintiff to file an application for attorney's fees and suit costs.

IV.      CONCLUSION

A Judgement consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith.

SIGNED May 16, 2025

_____
Eduardo V. Rodriguez
Chief United States Bankruptcy Judge

---

[214] ECF No. 1.
[215] TEX. CIV. PRAC. & REM. CODE § 38.001(1).
[216] *Tuttle v. Builes*, 572 S.W.3d 344, 360 (Tex. App. 2019) (citing *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009)).
[217] *Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d at 547.